UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| BRENDA LYNNE GOUGH, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 3:21-CV-70-JEM |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 18] and Defendant's Motion for Summary Judgment [Doc. 24]. Brenda Lynne Gough ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.  PROCEDURAL HISTORY

On January 25, 2019, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on January 23, 2019 [Tr. 15, 208–16]. After her application was denied initially and upon reconsideration,

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

Plaintiff requested a hearing before an ALJ [Tr. 128–31, 138–41, 145–46]. A telephone hearing was held on August 10, 2020 [Tr. 38–67]. On August 18, 2020, the ALJ found that Plaintiff was not disabled [Tr. 12–28]. The Appeals Council denied Plaintiff's request for review on January 11, 2021 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 2, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since January 23, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease, right upper extremity disorder, and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can lift and carry, push and pull 50 pounds occasionally and 25 pounds frequently. With normal breaks in an eight-hour day, she can sit for six hours, and stand and walk for six hours; can never climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs; can frequently balance, stoop, kneel, crouch, and crawl; can

frequently reach, handle, finger, feel, push and pull with the right upper extremity; can tolerate occasional exposure to unprotected heights; and can tolerate frequent exposure to moving mechanical parts and operating a motor vehicle.

6. The claimant is capable of performing past relevant work as a kitchen manager and Payroll auditor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 23, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 17–27].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

### IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

4

if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

5

prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V. **ANALYSIS**

Plaintiff contends the ALJ's decision is unsupported by substantial evidence. Specifically, Plaintiff argues the ALJ's RFC determination is flawed because it should have incorporated additional limitations and that the failure to incorporate additional limitations does not constitute harmless error because Plaintiff's RFC could have been more restrictive. In addition, Plaintiff asserts the ALJ failed to give "adequate weight" to the opinion of examining physician Alan Whiton, M.D. ("Dr. Whiton"). Plaintiff asks the Court to remand her case for further proceedings and proper adjudication. The Commissioner maintains the ALJ's disability determination and RFC finding are consistent with the record and submits that her final decision is supported by substantial evidence and should be affirmed. The Court finds the ALJ's decision to not incorporate additional limitations into the RFC was not erroneous, and the ALJ appropriately evaluated the evidence of record, including the opinion evidence. Substantial evidence supports the ALJ's RFC finding and disability determination. The Court will therefore affirm the Commissioner's final decision.

A. **ALJ's Alleged Failure to Find Additional Limitations**

Plaintiff claims the ALJ's final RFC determination is inconsistent with the evidence of record, as it excludes certain additional limitations that are supported by the record and would have established that she was unemployable. For example, Plaintiff faults the ALJ for not finding her diabetes mellitus to be a severe impairment and for "seemingly" failing to consider it when formulating Plaintiff's RFC [Doc. 19 p. 8]. Plaintiff states she testified that she experiences

6

dizziness, fatigue, and urinary urgency because of the medications she must take for her diabetes [*Id.*]. Plaintiff contends her alleged dizziness and vertigo are referenced within the treatment notes from her primary care providers at Mountain Hope Clinic—where she has been a patient for many years [*Id.* at 8–9 (citing [Tr. 382, 431, 456])]. In addition, Plaintiff relates the ALJ posed hypotheticals to the Vocational Expert at the hearing in an attempt to determine whether the need for additional breaks beyond those normally afforded would preclude an individual with the limitations provided in Plaintiff's RFC from work. Plaintiff contends such a line of questioning indicates the ALJ was aware of Plaintiff's need for additional breaks on account of her limitations, but those limitations were not incorporated into the final RFC.

The Commissioner argues that Plaintiff's claim that the ALJ failed to find additional impairments is "legally irrelevant" because the ALJ found other severe impairments [Doc. 25 p. 9]. The Commissioner argues that—by finding other severe impairments—the ALJ was required to consider all of Plaintiff's alleged impairments, regardless of whether they were considered "severe," when formulating the RFC. Furthermore, the Commissioner maintains the ALJ did sufficiently consider all of Plaintiff's alleged impairments.

The Sixth Circuit has previously stated that if an individual has at least one severe impairment, then the ALJ is required to assess how much work the individual can still do. *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (citing 20 C.F.R. § 404.1520(a)(4)(iv)). And "[w]hen making that assessment, 'the ALJ must consider limitations and restrictions imposed by all of [the] individual's impairments, even those that are *not* severe.'" *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007)) (emphasis added). Thus, "as long as the ALJ considers all of the individual's impairments, the 'failure to find additional severe impairments . . . does not constitute reversible error.'" *Id.* (quoting *Fisk*, 253 F. App'x at 583).

7

The Commissioner correctly notes that if a plaintiff has at least one severe impairment, then it is "legally irrelevant" that other impairments could have also been found to be severe when those impairments were considered in combination at later steps. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). To that end, the Sixth Circuit has previously determined that an ALJ's thorough review of the record along with a statement that all impairments were considered in combination sufficiently demonstrates that all impairments were properly considered in combination. *Id.* at 851.

Here, the ALJ found Plaintiff had the three severe impairments of degenerative disc disease, right upper extremity disorder, and obesity [Tr. 17]. In his decision, the ALJ noted that—pursuant to the regulations and SSR 96-8p—he "must consider all of the claimant's impairments, including impairments that are not severe" when formulating the RFC [*Id.*]. The ALJ also stated the RFC was based on the "entire record" [Tr. 21], and that he considered the nonsevere impairments [Tr. 18–19]. Remand is not warranted for the ALJ to identify additional severe impairments, as such a failure would be "legally irrelevant" under Sixth Circuit precedent. *Emard*, 953 F.3d at 852.

### B. Substantial Evidence Supports the ALJ's Determination of Plaintiff's RFC

Plaintiff generally argues that the ALJ's RFC determination lacks the support of substantial evidence. Plaintiff contends the ALJ's findings as to her handling, fingering and gripping limitations are inadequate when considering the entirety of the record, including the treatment notes of Jeffrey Uzzle, M.D. ("Dr. Uzzle") and others. Plaintiff also contends the ALJ failed to give "adequate weight" to Dr. Whiton's opinion.

In the decision, the ALJ found that Plaintiff's

> medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Tr. 22]. The Court finds that substantial evidence exists to support the ALJ's decision. The ALJ appropriately considered, among other things, the medical opinions, Plaintiff's medical treatment and the medical evidence, and Plaintiff's testimony and reported activities.

The ALJ must consider certain factors when evaluating a claimant's symptoms, including complaints of pain. Those factors are:

> (i) the claimant's daily activities;
>
> (ii) the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii) precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;
>
> (v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;
>
> (vi) any measures the claimant takes or has taken to relieve the pain or other symptoms; and
>
> (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529 and 416.929. An ALJ's determination as to a claimant's credibility regarding statements concerning her symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a

9

claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)). Factual determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

1. *Opinion Evidence*

The ALJ expressly considered the opinion evidence. Specifically, the ALJ reviewed Dr. Uzzle's June 2019 consultative examination and noted that he opined to Plaintiff being able to lift up to 50 pounds occasionally and 20 pounds frequently, sit for 6 hours, and stand and walk for 6 hours [Tr. 22, 406]. The Commissioner notes the state agency medical consultants also reviewed the medical records and opined that Plaintiff could perform ranges of medium work consistent with Dr. Uzzle's findings and opinion [Tr. 75–78, 100–02, 104–07]. By contrast, Dr. Whiton opined in December 2019 that Plaintiff could lift 20 pounds rarely and less than 10 pounds frequently, sit for 4 hours, and stand and walk for less than 2 hours [Tr. 23, 450].

The ALJ found Dr. Uzzle's opinion to be persuasive and Dr. Whiton's opinion to be unpersuasive [Tr. 22–25]. Plaintiff contends the ALJ's evaluation of Dr. Whiton's opinion was flawed because the ALJ failed to afford it "adequate weight." Plaintiff seems to be referring to the previous standard for an ALJ's evaluation of opinion evidence. Because Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's ("SSA") new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not

10

defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a).

The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)–(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

Moreover, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;
>
> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important

11

factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)–(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021). With that framework in mind, the Court turns to the opinions.

        a.    Dr. Uzzle's Opinion

Plaintiff does not specifically argue that the ALJ's evaluation of Dr. Uzzle's opinion was erroneous; rather, Plaintiff contends that Dr. Uzzle's opinion supports a finding that she had greater handling, fingering, and gripping limitations than what is provided in the final RFC. As an initial matter, Dr. Uzzle opined that Plaintiff could frequently reach, handle, finger, feel, push, and pull with her right arm [Tr. 408], and the ALJ incorporated that specific limitation into the final RFC finding [Tr. 21 ("can frequently reach, handle, finger, feel, push and pull with the right upper extremity")].

Even so, Plaintiff argues Dr. Uzzle noted that she had decreased muscle circumference in her right arm and that her grip strength on the right was moderately decreased from that on the left and some additional treatment notes indicated she had complained of soreness and aching in her

12

right upper extremity with an inability to open a jar, as well as tingling and pain in her arm [Doc. 19 (citing [Tr. 403, 442, 456])]. While the record may contain evidence of more severe limitations—even within Dr. Uzzle's own opinion—and although Plaintiff would interpret the evidence differently, the Court finds the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that, as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). As such, the Court will not disturb the ALJ's evaluation and use of Dr. Uzzle's opinion, as they were appropriate under the circumstances

       b.    Dr. Whiton's Opinion

   The ALJ found Dr. Whiton's opinion to be unpersuasive [Tr. 24]. Dr. Whiton completed a Lumbar Spine Residual Functional Capacity Questionnaire in December 2019, indicating that Plaintiff had lumbar disc degeneration with tenderness and decreased range of motion [Tr. 448–49], and he opined that Plaintiff could sit for 4 hours and stand and walk for less than 2 hours [Tr. 450]. Dr. Whiton opined that Plaintiff could lift 20 pounds rarely, 10 pounds occasionally, and less than 10 pounds frequently; could occasionally twist and stoop, rarely climb

13

stairs, and never crouch/squat of climb ladders [Tr. 450–51]. The ALJ considered that Dr. Whiton examined Plaintiff only one time [Tr. 23–24]; *see* 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2) ("Relationship with the claimant" being one of the factors to be considered when evaluating opinion evidence, including length of the treatment relationship and frequency of examinations).

The ALJ found Dr. Whiton's limitations to be inconsistent with Dr. Whiton's own findings that indicated Plaintiff had no focal motor or sensory deficits [Tr. 24, 440]; *see* 20 C.F.R. §§ 404.1520c(c)(1) & 416,920c(c)(1). The ALJ also found the opinion to be inconsistent with Dr. Uzzle's examination that showed normal gait and station with full ranges of motion except for slightly reduced lumbar flexion and no sensory deficits [Tr. 25, 403, 414–15]; *see* 20 C.F.R. §§ 404.1520c(c)(2) & 416,920c(c)(2). The ALJ found Dr. Whiton's opinion to be inconsistent with Plaintiff's reported daily activities as well [Tr. 25].

Plaintiff argues the ALJ incorrectly stated that Dr. Whiton did not review x-rays [Doc. 19 at 10]. Dr. Whiton stated Plaintiff had received lumbar x-rays a "few years ago" showing "scattered mild" degenerative changes [Tr. 438]. The Commissioner responds that Plaintiff offers no explanation as to how x-rays dated prior to the alleged onset date showing only "scattered mild" degenerative changes would have changed the ALJ's decision and that—while Dr. Whiton stated that he had seen these x-rays—they are not part of the administrative record, and Plaintiff's counsel indicated the record was complete at the hearing [Tr. 15, 42]. The Commissioner states an attempt was made to obtain these x-rays when she was advised about their possible existence [Tr. 266, 370], and notes that these x-rays were not submitted to the Appeals Council nor to this Court, despite Plaintiff's claim that they contradicted the ALJ's decision [Tr. 2]. In addition, the Commissioner argues that Plaintiff's argument ignores the prior administrative medical finding of Thomas Thomson, M.D. ("Dr. Thomson"). Dr. Thomson considered Dr. Whiton's statement

14

regarding the lumbar x-rays and found Plaintiff could perform a range of medium work [Tr. 101]. The Commissioner contends that Dr. Whiton's reference to outdated x-rays showing "scattered mild" changes does not contradict the ALJ's determination. The Court agrees, especially when it considers that those x-rays were never made part of the administrative record, nor were they provided to the Appeals Council or to this Court. The Court finds that the ALJ's evaluation of Dr. Whiton's opinion was appropriate, as he articulated his findings as to Dr. Whiton's opinion, finding it to be inconsistent with the other evidence of record and otherwise lacking supportability—even from Dr. Whiton's own findings.

c.  Prior Administrative Medical Findings

Plaintiff does not argue that the prior administrative medical findings support her disability, but the Commissioner acknowledges that the ALJ erred by not articulating how he considered the prior administrative medical findings. Despite that error, the Court agrees with the Commissioner that the error would not have altered the ALJ's disability determination.[2]

2.  *Plaintiff's Prior Treatment, Other Medical Evidence, Inconsistencies in the Record, and Daily Activities*

The ALJ also considered the treatment Plaintiff received for her allegedly disabling symptoms in addition to the opinion evidence [Tr. 18, 22–23]; *Helm v. Comm'r of Soc. Sec.*, 405

---

[2] Specifically, in June 2019, Larry McNeil, M.D. ("Dr. McNeil"), reviewed the medical records and opined that Plaintiff could perform a range of medium work [Tr. 75–78]. Dr. Thomson reviewed the updated medical records in February 2020, including Dr. Whiton's examination and reference to the older lumbar x-rays [Tr. 101, 106], and he opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, sit for 6 hours, and stand and walk for 6 hours among other limitations that were consistent with the ALJ's ultimate RFC finding [Tr. 105]. Drs. McNeil and Thomson opined that Plaintiff must avoid concentrated exposure to temperature extremes and unprotected heights [Tr. 77, 106], and the ALJ failed to include extreme temperature limitations in the RFC, but exposure to temperature extremes is not required for performing Plaintiff's past relevant work.

F. App'x 997, 1001 (6th Cir. 2011) (a "modest treatment regimen . . . was inconsistent with a finding of total disability." (citing *Mynatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334–35 (6th Cir. 2009))). Plaintiff alleged disability based in part on her diabetes; however, the ALJ considered Plaintiff's treatment for that condition and found her diabetes was not severe, noting that Plaintiff had failed to comply with her prescribed diet and proper timing of her insulin [Tr. 18, 373, 433]. Plaintiff also complained of mild vertigo, but this was related to skipping meals, and her symptoms were reduced after eating [Tr. 18, 456]. The ALJ considered that Plaintiff was also instructed by her medical providers on multiple occasions to lose weight and exercise [Tr. 18, 373, 433, 456, 464]. Furthermore, Plaintiff's diabetes remained uncontrolled but with no apparent complications [Tr. 433].

And the ALJ considered the clinical findings, finding that they did not support Plaintiff's subjective complaints [Tr. 22–23]; *see Kirkland*, 528 F. App'x at 427 (quoting 20 C.F.R. § 404.1529). On physical examination, Plaintiff displayed normal gait, station, deep knee bending, and toe, heel, and tandem walking, and she had full strength except for right grip strength [Tr. 403]. The ALJ noted that Dr. Whiton found reduced lumbar range of motion [Tr. 23, 440]; however, Dr. Uzzle found that Plaintiff had full ranges of motion excluding slightly reduced lumbar flexion [Tr. 22, 403, 414–15].

Further, the ALJ considered various inconsistencies within the record [Tr. 19–20, 24–25]. This included the fact that Plaintiff was fired from her previous employment but applied for and received unemployment benefits [Tr. 24, 45, 222]. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) ("There is 'no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work.'" (quoting *Bowden v.*

16

*Comm'r of Soc. Sec.*, 173 F.3d 854 (6th Cir. 1999))).

Finally, the ALJ considered Plaintiff's reported daily activities [Tr. 19–20, 25]. *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to [plaintiff's] ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether [plaintiff's] testimony was credible."). Plaintiff testified that she was able to care for her pet, prepare simple meals, clean, vacuum, do laundry, drive, shop, and use a computer [Tr. 19–20, 25, 246–49, 278–81].

The Court finds the ALJ's evaluation of Plaintiff's alleged impairments was proper, as he found them to be inconsistent with and unsupported by the evidence of record. In making that determination, the ALJ considered numerous factors, including the opinion evidence, Plaintiff's medical treatment, the objective evidence, and Plaintiff's reported daily activities. Thus, the Court finds that the ALJ's RFC finding and disability determination were formulated in accordance with the relevant rules and regulations and are supported by substantial evidence.

## VI. CONCLUSION

The Court finds that Plaintiff has not met her burden to prove that she is disabled, *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), as she has not shown she is unable to perform her past relevant work. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). The ALJ properly relied on the Vocational Expert's testimony as part of the basis for his decision, and he incorporated only those impairments and limitations that were supported by the record into his hypothetical questions. *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014). The Court finds that the ALJ's formulation of the final RFC was proper in this case, and the ALJ's concluding that Plaintiff could perform both her past relevant work and other existing work in significant numbers in the national economy was appropriate. The ALJ's finding Plaintiff not to

17

be disabled under the SSA's rules is supported by substantial evidence.

For all the reasons above, the Court will **DENY** Plaintiff's Motion for Summary Judgment [**Doc. 18**] and **GRANT** the Commissioner's Motion for Summary Judgment [**Doc. 24**]. The Court will **AFFIRM** the decision of the Commissioner. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
Jill E. McCook
United States Magistrate Judge

18

Case 3:21-cv-00070-JEM   Document 28   Filed 04/15/22   Page 18 of 18   PageID #: 606